IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED NOV 5 '01 PM 2 07 USDCALS

TIMOTHY DYCHE AND
DONALD PERKINS, JR. PLAINTIFFS

VERSUS CAUSE NO. 01-0773-M

SOUTHEAST COLLEGE OF TECHNOLOGY, INC.
EDUCATION AMERICA, INC., EDUCATION
AMERICA MANAGEMENT CORPORATION,
ROBERT RODGERS, AND PATRICIA ALLEN DEFENDANTS

**COMPLAINT**
**JURY TRIAL DEMANDED**

COME NOW, the Plaintiffs Timothy Dyche and Donald Perkins, Jr. and files this their Complaint against Defendants Southeast College of Technology, Inc., Education America, Inc., Education America Management Corporation, Robert Rodgers, and Patricia Allen and would show unto the Court as follows, to-wit:

**PARTIES**

**1**

Plaintiff Timothy Dyche is an adult resident citizen of Mobile County, Alabama.

**2**

Plaintiff Donald Perkins, Jr. is an adult resident of George County, Mississippi.

**3**

The Defendant Southeast College of Technology, Inc., hereinafter referred to as

S.C.T., is a corporation established in the state of Alabama, located in Mobile, Alabama, and engaged in the business of recruiting and training students in computers.

4

The Defendant Education America-Southeast College of Technology, Little Rock, Inc., Education America, Inc. and/or Education Management Corporation hereinafter collectively referred to as E.A., are the solitary owners and management corporations of S.C.T., and are Arkansas corporations.

5

The Defendant Robert "Bobby" Rodgers, hereinafter referred to as Rodgers, is an adult resident citizen of Mobile, Alabama and is an instructor employed by S.C.T. and E.A.

6

The Defendant Patricia Allen, hereinafter referred to as Allen, is an adult resident citizen of Mobile, Alabama and is an instructor employed by S.C.T. and E.A.

**JURISDICTION**

7

Jurisdiction of this Court is invoked pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C.§1681, *et seq.* and 42 U.S.C.§1981, 1983, *et seq.* and the Court's authority under 28 U.S.C.§1367(a) to exercise supplemental jurisdiction over state statutory and common law actions.

**VENUE**

8

Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C.§ 1391

(b) in that this is a civil action wherein jurisdiction is not founded on diversity of citizenship and Plaintiffs' claims arise in this judicial district.

**FACTUAL ALLEGATIONS**[1]

**9**

S.C.T. is a wholly owned subsidiary of E.A. and is an education institution believed to be receiving both federal and state funding. S.C.T. offers an associates degree of occupational studies in Electronics Engineering Technology, which is an 18 month, six quarter program.

**10**

In June 2000, the Plaintiffs enrolled at S.C.T., primarily in efforts to obtain an associate's degree in Electronics Engineering Technology and secondarily, to make business contacts in attempts to obtain employment upon completion of the degree.

**11**

As students in the Electronics Engineering Technology Program, the Plaintiffs shared the same class schedule each quarter and became acquaintances.

**12**

The two Plaintiffs were enjoying the education experience at S.C.T. and were accelerating toward achieving their educational and potential employment goals. Plaintiff Perkins, due to his good academics, had even acquired a job in the school's computer lab, which helped support his family during his enrollment.

---

1Based on information and belief after reasonable inquiry under the circumstances, the allegations and other factual contentions have evidentiary support or are likely to have evidentiary support after a reason opportunity for further investigation or discovery.

**13**

In their second quarter, another student informed the Plaintiffs that Rodgers, an instructor at the school and Defendant named herein, had approached him after class one night, told him how good looking he was and that he wanted him to make a pornographic movie. The student was deeply disturbed by the un-welcomed approach, as were the Plaintiffs upon hearing of the same.

**14**

Shortly after the Plaintiffs learned of the other student's experience with Rodgers, Rodgers approached Plaintiff Dyche and asked him to strip at a party for $500.00. Plaintiff Dyche refused the offer.

**15**

The Plaintiffs became aware shortly afterward, that Rodgers was very diligent in his efforts to have the student do the movie, and in exchange for him doing the movie, offered the student and his friends, the Plaintiffs named herein, academic advantages, such as falsifying records, awarding "A's" in course-work, and great job connections, including interviews at some of the top computer companies nationwide.

**16**

At about the same time, Rodgers approached Plaintiff Dyche and informed him that he had a friend who was beginning as a teacher at the school, who needed a "boyfriend" just to keep her satisfied. That friend was Defendant Allen who met and engaged in an intimate relationship with Plaintiff Dyche for a period of months. Allen wrote e-mail and correspondence to Plaintiff Dyche in which she identified the Plaintiff as "Dylan" and herself

as "Samantha." Allen informed Plaintiff Dyche that he and Plaintiff Perkins would receive academic benefit at the school as long as the relationship continued.

**17**

During the third quarter, Plaintiff Dyche ended the relationship with Allen. At the school, Rodgers expressed his displeasure with Plaintiff Dyche's decision, but had an offer for him that would smooth everything over. Following class one evening, Rodgers propositioned Plaintiff Dyche to have sex with Allen in a pornographic movie. In exchange for doing the movie, Rodgers guaranteed that he would rearrange faculty assignments to teach the remainder of both Plaintiffs' classes and would falsify records on their behalf, would give them both "A's", and would see to it that both Plaintiffs got excellent job recommendations with top notch companies upon graduation. Plaintiff Dyche declined the offer. Plaintiff Perkins supported Plaintiff Dyche in his decision.

**18**

Upon information and belief, Defendants Allen and Rodgers plotted together to offer academic benefits to Plaintiffs in exchange for Plaintiff Dyche making the pornographic movie. Both engaged in inappropriate relationships with Plaintiffs in derogation of the teacher-student relationship.

**19**

One evening during fourth quarter, Plaintiffs had gone to a local billiards club, "Bumpers." While playing billiards, Plaintiffs noticed Defendants Allen and Rodgers. At the establishment the Defendants purchased alcoholic beverages for the Plaintiffs, and other students, and shortly afterwards, Rodgers approached Plaintiff Perkins and told him how good looking he was and that he was interested in getting to know him better.

Defendant Rodgers also handed Plaintiff Perkins a birthday card, on which Rodgers had written sexual comments. Plaintiff Perkins was extremely disturbed by Rodgers un-welcomed advance and told Dyche he wanted to leave.

**20**

As Plaintiffs attempted to leave the club, Rodgers pursued Plaintiff Perkins outside, continuously offering sexual favors and propositioning him with guaranteed "A's" and job connections. Plaintiff Perkins instructed Plaintiff Dyche to get the car started and to get him away from Rodgers. The two Plaintiffs were absolutely amazed at Rodgers' explicit behavior.

**21**

Plaintiff Dyche and Perkins communicated their concern one to another regarding the behavior of the two instructors. Plaintiff Perkins was informed again of Rodgers persistence for Plaintiff Dyche to make a pornographic movie. Perkins further understood that he was to benefit if Dyche would to do the movie, although he instructed Dyche not to do the movie and to tell Rodgers "no thanks" but to communicate same in a fashion that Rodgers would not get mad and seek revenge.

**22**

Upon receipt of the rejection, Rodgers was furious and promised that his wrath would be exacted upon the Plaintiffs. Rodgers informed the Plaintiffs that any effort they made to communicate with the administrative department would just get them in more trouble and possible expulsion, as they were in on it and "knew everything." At one point, Rodgers informed Plaintiffs that expulsion slips were already filled out in the office and if

Plaintiffs complained, he would have the slips signed and Plaintiffs would be expelled. This threat also applied to any complaint Plaintiffs had towards Defendant Allen.

**23**

Also during the fourth quarter, the student aforementioned communicated to Plaintiffs that he was having some real problems with Rodgers who continuously harassed him. He informed the Plaintiffs that Rodgers was going to see to it that he was involuntarily dismissed because Rodgers wanted it that way. Plaintiffs were also informed by teachers that another student had reported Rodgers to the office but was severely disciplined.

**24**

During the fourth quarter, Rodgers lived up to his promise to punish Plaintiffs. He strategically arranged for himself to be assigned as Plaintiffs' instructor for their remaining three quarters. Rodgers communicated to the Plaintiffs that he had connections in the administrative office and could do what he wanted, and had bumped other professors from their assigned classes just so that he could be the Plaintiffs' teacher for their last three quarters, and that he could make life easy or hard on them. Plaintiff Dyche and Perkins lived in terror and intimidation having spent over $20,000.00 on the specialized education that S.C.T. offers, and that said sum could be jeopardized by Rodgers apparently "snapping his fingers." Based on conversations with the other student and teachers, the Plaintiffs were well aware that Rodgers was capable of running them out of the program if he wanted it that way. In fact, Plaintiffs were well aware that Rodgers disciplined others and witnessed members of the faculty and administration laugh about Rodgers making a big deal out of minuscule offenses in his disciplining students. No faculty or administrative

member stepped forward to challenge Rodgers or to make him validate any charge, nor did they assist and/or protect students. To Plaintiffs this verified Rodgers' and Allen's claims that they had powerful sway with the administration and a connection in the office that would see to it that student's complaints against faculty would be ignored and would be grounds for discipline or possible dismissal.

**25**

During the fourth quarter, as a demonstration of how he could make life hard, Rodgers revoked the Plaintiffs' internet privileges (even knowing that it was imperative that students have such access to complete various projects). Defendant Rodgers also had Plaintiff Perkins fired from the computer lab, and he told the students he was not going to teach them anything for the rest of their enrollment at the school as punishment for not complying with his wishes.

**26**

Rodgers instructed the Plaintiffs' that there was absolutely nothing that they could do to stop him, as his connection in the office knew everything, and had even allowed him to rearrange the faculty assigned to teach certain curriculum so that he could be Plaintiffs' instructor the last three semesters. The message he conveyed to Plaintiffs was clear: no one at this school can help you and you will face serious consequences for any attempt to communicate with the office. In fact, Rodgers reinforced this statement by providing Plaintiffs with an example of a student that did complain and was expelled.

**27**

During the fifth quarter, Rodgers requested to speak with Plaintiff Dyche after class

one evening.  He took Dyche into his office and informed him that he had already filmed a pornographic movie and paid the star of the movie $6,000.00.  Dyche was informed that the movie was sent to a Chicago fetish bar.  It is unknown at this point if the star of the movie is a student who gave in to Defendant Rodgers persistent offers.  Dyche was further informed that Rodgers was making another movie and Dyche could name his price.  Also, Rodgers promised in exchange for Dyche doing the movie, he would "ease up" on Dyche and Perkins.

**28**

Plaintiff Dyche was informed that this movie's script involved Dyche dressing up as a police officer, lying on the ground, and having four African-American males urinating on him.  It was at this point Defendant Rodgers requested that Dyche remove his clothing so that Rodgers could look him over and feel his muscles.

**29**

Once again, Plaintiff Dyche refused to do the movie; he also refused Rodgers advances.  Since that time both Plaintiffs have continued to endure the wrath of Rodgers.  However, it is believed that during the fifth quarter, Rodgers began easing up on Plaintiffs, perhaps in fear of this Complaint being filed.

**30**

The entity Defendants by way of their employees, agents, and representatives have engaged in retaliatory acts against the Plaintiffs and others for their allegations against the school by way of threats of intimidations, mysteriously "losing" test answers and threatening to fail Plaintiff Dyche, suspend, or make him re-take the examination on the

spot. Moreover, Defendant Rodgers along with other employees, representatives, and agents of entity Defendants also continues to engage in conduct making the educational environment hostile as a result of Plaintiffs' allegations contained herein.

**31**

Throughout the second quarter to the present, Plaintiffs were continually subjected to sexual harassment from Defendants. The harassment included a pattern of overt and sexually suggestive verbal and physical acts. The harassment struck fear in the hearts of the Plaintiffs and was extremely detrimental to their ability to learn. It otherwise caused physical, mental, and psychological strain upon them.

**32**

During the Plaintiffs' enrollment at S.C.T., other faculty, administrative, and staff members were aware of Defendants' behavior and no one at the school did anything to correct the situation. They were aware of the quid pro quo and the hostile environment and nothing was done.

**33**

Defendant Rodgers' statements to Plaintiff's that the office knew what he was doing and were only going to punish Plaintiffs for reporting him and Defendant Allen is prima facie evidence of actual notice, imputed to entity Defendants, as such a statement is made voluntary against the institutions' pecuniary interest by its own employee, agent and representative. Therefore, the institution is bound by such statements.

**34**

Throughout the entire period mentioned herein, the school knew and should have

known of the instances and occurrences which took place, and failed to take any appropriate action to investigate and to protect Plaintiffs and remedy the situation.

**35**

The Defendants S.C.T. and E.A. failed to developed and adopt proper screening procedures for hiring, supervising, and training of their employees and/or failed to utilize such procedures in the employment of Defendants.

**36**

It is believed that S.C.T. offers a sexual harassment seminar to faculty, administration, and staff. The seminar occurred during working hours at the S.C.T. campus in a classroom in the vicinity of students, including Plaintiffs . However, at the completion of the seminar, faculty members were seen coming out of the classroom laughing and making comments about how the program was not going to stop them. Plaintiff Dyche heard Defendant Allen and Rodgers comment on how they now had a license to sexually harass students; faculty members laughed at the comment. Defendant Allen then approached Plaintiff Dyche and fondled him in front of other faculty members.

**37**

It is apparent that no Defendant, employee, agent or representative thereof took the instruction seriously, as no one took the necessary disciplinary actions against the faculty members who were making sexual comments, suggestions, offers to students to perform in pornography and otherwise acting inappropriately. No Defendant, employee, agent or representative thereof advised either Plaintiff regarding the Title IX Student/Grievance Procedure. No employee, agent or representative of the Defendant despite knowledge of

the events described herein, investigated, provided protection to Plaintiffs, or assisted Plaintiffs in any way. As a result of these failures, Plaintiffs' right to a non-hostile environment and un-welcomed sexual advance at school was denied.

**COUNT ONE**
**SEXUAL HARASSMENT & RETALIATION PURSUANT TO TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**

**38**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable. Defendants jointly and severally, negligently, intentionally, willfully and without justification acted to deprive Plaintiffs on the ground of their sex, of their rights, privileges and immunities secured by them by the laws of the United States, particularly their right to be free from discrimination in education on the grounds of their sex as provided by Title IX of the Education Amendments of 1972.

**39**

The educational environment provided by Defendants was a sexually abusive environment which inhibited and prevented the Plaintiffs from developing their full intellectual potential and from receiving the most from the academic programs offered. It was and is a hostile environment. The offers and implications of academic and employment benefits made by Defendants in exchange for sexual favors constitutes quid pro quo sexual harassment. Defendants are liable for the hostile environment and for the quid pro quo sexual harassment. Any diminution or deprivation of such an academic benefit on the basis of sex violates Title IX.

**40**

The entity Defendants despite knowledge, actual and constructive, and adequate opportunity to learn of the misconduct of their agents, employees or representatives adopted, approved, and ratified these acts, omissions, and misconduct of said Defendants.

**41**

The entity Defendants despite knowledge of the necessity to adopt Title IX grievance policies and procedures, failed to do so in a proper and effective manner and failed to inform the student body of any method by which complaints of harassment could be presented to the administration. Moreover, even after knowledge of Plaintiff's Title IX allegations and the consequences for such violations, the entity Defendants encouraged and/or permitted its employees, representative and agents to retaliate against Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as herein after set forth.

**COUNT TWO**
**VIOLATION OF 42 U.S.C. §1983[2]**

**42**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable. In doing each and all of the acts alleged herein, all Defendants were under color of state law.

**43**

All Defendants had a duty to provide and ensure an educational environment for the Plaintiffs free of sexual innuendo, intimidation and discriminatory animus and to enforce

---

**[2] Upon information and belief, at this time it is believed this institution receives state funding and is therefore acting under color of state law.**

the regulations, rules and laws necessary to protect the Plaintiffs and other students from acts of sexually harassment, abuse, and hostile environment, included but not limited to bias and discrimination.

**44**

All Defendants, by their conduct herein alleged, intentionally, willfully, and without justification did deprive the Plaintiffs on grounds of their sex of rights, privileges, and immunities secured by the U.S. Constitution and the laws of the United States, including but not limited to, their rights of equal protection of law as provided by the Fourteenth Amendment of the Constitution and their rights to privacy as protected by the Fourth, Fifth, Ninth, and Fourteenth Amendment of the Constitution, in violation of 42 U.S.C. §1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT THREE**
**VIOLATION OF CIVIL RIGHTS**

**45**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**46**

In doing each and all of the acts alleged herein, all Defendants attempted to and did interfere with the Plaintiffs' exercise of their civil rights secured by the Constitution and laws of the United States, Alabama and Mississippi, as applicable.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT FOUR**
**BREACH OF CONTRACTUAL AND LEGAL DUTY AS STATED IN NONDISCRIMINATION POLICY AND FRAUDULENT NEGLIGENT INNOCENT**

**MISREPRESENTATION**

**47**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**48**

Defendants had a contractual and legal duty based upon the representation provided in the 2000 Campus Catalog which was supplied to Plaintiffs and which states in part:

> Southeast College of Technology does not..discriminate on the basis of ...sex, gender....sexual orientation. SCT complies with the Civil Rights Act of 1964, related Executive Orders 11246 and 11375, Title IX of the Education Amendments Act of 1972, Sections 503 and 504 of the Rehabilitation Act of 1973....and all civil rights laws of the State of Alabama.

**49**

This representation was a purported benefit derived from attending said institution, to which Plaintiffs should have received upon and during enrollment at said institution.

**50**

Defendants breached this contractual and legal duty.

**51**

Entity Defendants falsely, with reckless indifference to the truth, and/or by negligent act and/or omission, and/or by innocent act and/or omission misrepresented the material fact that the school complied with the aforementioned authority. The intent behind publishing said policy was to induce student's reliance thereon. Plaintiffs justifiably relied on the misrepresentation and were subjected to such discrimination.

52

The conduct of the Defendants were grossly negligent, intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT FIVE**
**INVASION OF PRIVACY**

53

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

54

Defendants Rodgers and Allen intruded upon Plaintiffs physical solitude and seclusion of Plaintiffs' sexual concerns which are entitled to privacy protection. The intrusion by Defendants was offensive and objectionable to Plaintiffs, and, as will be shown at trial, offensive to the reasonable person.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT SIX**
**ASSAULT AND BATTERY**

55

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

56

Defendants Rodgers and Allen did engage in intentional, un-excused acts that

created in Plaintiffs a reasonable apprehension and/or fear of immediate offensive contact and did at times, complete said acts. Defendants by their acts and/or conduct did engage in assault and battery of Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT SEVEN**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**57**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**58**

The conduct of the individual Defendants was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct. The Defendants conduct did and will cause emotional and mental distress to Plaintiffs the remainder of their lifetimes.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT EIGHT**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**59**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**60**

In doing each and all of the acts alleged herein, all Defendants engaged in a course of conduct which was negligent, grossly negligent, extreme and outrageous. Which

breached their duty owed to Plaintiffs. Defendants engaged in said course of conduct with neglect, wanton and/or reckless disregard of the consequences or harm or injury that might result to Plaintiffs.

**61**

The conduct of the individual Defendants was intentional, negligent, oppressive, malicious and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct. The Defendants conduct did and will cause emotional and mental distress to Plaintiffs the remainder of their lifetimes.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT NINE**
**BREACH OF CONTRACT AND DUTY OF REASONABLENESS**

**62**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**63**

Defendants represented to Plaintiffs that in exchange for the tuition paid, they would receive an education in the area of Electronics Engineering Technology.

**64**

Warranted in that agreement is the legal duty of the reasonably prudent educational facility to provide to students a nondiscriminatory environment essential to maximum intellectual growth.

**65**

However, Defendants provided a sexually abusive environment which inhibited, if

not prevented, the harassed Plaintiffs from developing their full intellectual potential and from receiving the most from the academic program.

66

Defendants agents, employees and representatives intentionally disrupted both Plaintiffs' educational environment. Defendant Rodgers took an active part to see to it that Plaintiffs not receive the education for which they had paid.

67

Defendants Allen and Rodgers engaged in a course of conduct which was malicious, willful, and with reckless and/or intentional disregard of the consequences or harm or injury that might result to Plaintiffs.

68

Defendants as reasonably prudent administrators, faculty and staff owed a legal duty to their students to provide a nondiscriminatory environment essential to maximum intellectual growth. This duty was breached by all administrators, faculty and staff by not monitoring, supervising, and or reporting or otherwise preventing the despicable behavior of Defendants Rodgers and Allen constituting negligence and gross negligence on the part of Defendants, employees, agents and representatives. Defendants Rodgers and Allen engaged in intentional extreme and outrageous conduct in reckless disregard of the consequences or harm or injury that might result to Plaintiffs.

69

In doing each and all the acts alleged herein, all Defendants breached a contract with Plaintiffs. These Defendants have also breach a legal duty to act reasonably owed

to Plaintiffs by the acts and/or omissions constituting negligence, gross negligence, and reckless disregard of the harm that might result to Plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT TEN**
**BREACH OF FIDUCIARY RELATIONSHIP**

**70**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**71**

Defendants had a fiduciary relationship by way of the student-teacher, student-administrator, and student-school relationship. This relationship was based upon an inherent trust by students in their superiors to provide a safe and secure learning environment and to monitor and assist the students in achieving their educational and employment goals.

**72**

In doing each and all the acts alleged herein, all Defendants breached this relationship with the Plaintiffs. These Defendants have also breached a legal duty to Plaintiffs which was negligent, grossly negligent and with reckless disregard of the consequences or harm or injury that might result to Plaintiffs.

**73**

The conduct of the Defendants was negligent, grossly negligent, intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT ELEVEN**
**VICARIOUS LIABILITY/RESPONDEAT SUPERIOR**

**74**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**75**

As applicable, Defendants S.C.T. and E.A. are vicariously liable for the each and all of the acts alleged herein by way of the doctrine of respondeat superior. Despite knowledge and adequate opportunity to correct the misconduct of its agents and employees, Defendants adopted, approved, and ratified the acts, omissions and misconduct of its agents and employees. Moreover, Defendant Rodgers' statements that the administration knew of his behavior and would do nothing about it imputes knowledge and liability to entity Defendants.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT TWELVE**
**NEGLIGENT HIRING, SUPERVISION, ENTRUSTMENT AND TRAINING**

**76**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**77**

Defendants are liable for the negligent hiring of Rodgers and Allen and all other faculty, administrators, and staff who failed to monitor and supervise said instructors.

Defendants are also negligent for failure to train and/or properly instruct faculty, administrators, and staff on handling instances made the basis of the complaint, and in entrusting the educational "facilities" (an all inclusive term including chattels of entity Defendants) to individuals who had a legal duty to provide education to students and to provide and protect the learning environment from the acts and omissions of Defendants.

**78**

The conduct of the Defendants was negligent, grossly negligent, intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT THIRTEEN**
**FAILURE TO DISCIPLINE**

**79**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**80**

Even after discovering the factual basis of the allegations contained herein, Defendants S.C.T. and E.A. failed to discipline Rodgers and/or Allen.

**81**

Such conduct of the Defendants constitutes negligent, grossly negligent, intentional, oppressive, malicious, and/or in wanton disregard of the rights and feelings of Plaintiffs and constitutes despicable conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT FOURTEEN**
**NEGLIGENCE AND CAUSATION**

**82**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**83**

At all times herein, all Defendants owed a duty of care to Plaintiffs. Defendants by various acts and omissions mentioned herein and as may be determined throughout the course of discovery, breached said duty.

**84**

As a direct and proximate result of all of these acts and/or omissions, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**COUNT FIFTEEN**
**DAMAGES AND INJURIES**

**85**

Plaintiffs reallege and incorporate by reference paragraphs 1-37 and all subsequent paragraphs as applicable.

**86**

As a result of Defendants acts and/or omissions, Plaintiffs have sustained injuries and damages including but not limited to loss of enjoyment of life, loss of educational benefit, injury to personal dignity, self-respect, and reputation, severe emotional distress,

mental health problems, including but not limited to depression, fear, anxieties, inability to function normally in social situations and in relationships with family, peers and superiors. Plaintiffs have also sustained such other injuries and damages as may be revealed in discovery and at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs hereby sue and demand judgment of and from and against the Defendants, jointly and severally, for actual damages, punitive damages, and any and all other applicable damages to the maximum amount allowed by law ***at a jury trial of this cause***, together with any and all prejudgment and post judgment interest, all costs of Court, attorneys' fees and expenses, and any and all such other and further relief to which Plaintiffs are entitled in law and equity.

RESPECTFULLY SUBMITTED, this the 2 day of November, 2001.

TIMOTHY DYCHE AND
DONALD PERKINS, JR., Plaintiffs

BY: ALLEN, VAUGHN, COBB & HOOD, P.A.

JEFFREY G. PIERCE
AL BAR 0135-F66P; U.S.D.C. CODE-PIERJ0135

ALLEN, VAUGHN, COBB AND HOOD, P.A.
Attorney's at Law
One Hancock Plaza, Suite 1209
Post Office Drawer 4108
Gulfport, MS 39502-4108
Telephone Number (228) 864-4011
Telecopier Number (228) 864-4852
Alabama Bar No. ASB-0135-F66P

## CERTIFICATE OF SERVICE

I, JEFFREY G. PIERCE, do hereby certify that I have this day sent via certified mail, return receipt requested through the United States Mail, postage prepaid, a true and correct copy of the above and foregoing Complaint to Defendants to the following:

Fred McClure
Education America, Inc.,
Education American Management Corp.,
Southeast College of Technology, Inc.
Holland & Knight, L.L.P.
Post Office Box 1288
Tampa, Florida 33601-1288

Robert Rodgers
Southeast College of Technology
828 Downtowner Loop West
Mobile, Alabama 36609
Personal Service or in Manner
Prescribed by Law

Mary White
Agent for Process
Education America
Southeast College of Technology, Inc.
828 Downtowner Loop West
Mobile, Alabama 36609

Suzette Goodman
Agent for Process
Education America
Management Corporation
500 East Markham, Suite 305
Little Rock, Arkansas 72201

Jerald M. Barnett, Jr.
Agent for Process
Education America, Inc.
500 East Markham, Suite 305
Little Rock, Arkansas 72201

Patricia Allen
Southeast College of Technology,
28 Downtowner Loop West
Mobile, Alabama 36609

SO CERTIFIED this the 2 day of November, 2001.

JEFFREY G. PIERCE

ALLEN, VAUGHN, COBB AND HOOD, P.A.
Attorney's at Law
One Hancock Plaza, Suite 1209
Post Office Drawer 4108
Gulfport, MS 39502-4108
Telephone Number (228) 864-4011
Telecopier Number (228) 864-4852
Alabama Bar No. ASB-0135-F66P